## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | |
|---|---|
| The Vaping Dragon LLC, d/b/a The Vaping Dragon,<br><br>                    Plaintiff,<br><br>     v.<br><br>U.S. Food and Drug Administration, *et al.*,<br><br>                    Defendants. | Civil Action No. 1:25-cv-0081-H |

## Combined Memorandum in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Motion for a Preliminary Injunction

OF COUNSEL:

SEAN R. KEVENEY
Acting General Counsel
U.S. Department of Health and Human
  Services

ROBERT FOSTER
Deputy General Counsel
U.S. Department of Health and Human
  Services
Chief Counsel for Food, Research, and
  Drugs

WENDY VICENTE
Deputy Chief Counsel, Litigation

LESLIE COHEN
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD  20993-0002

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
  General
Civil Division

LISA K. HSIAO
Acting Director

JAMES W. HARLOW
Acting Assistant Director
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044-0386

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 3

   I.   Family Smoking Prevention and Tobacco Control Act ............................ 3

   II.   Administrative proceeding against Vaping Dragon ................................. 5

   III.   Vaping Dragon's lawsuit against FDA ................................................... 6

LEGAL STANDARD .............................................................................................. 6

ARGUMENT ........................................................................................................ 7

   I.   The TCA divests this Court of subject-matter jurisdiction ...................... 8

   II.   Administrative proceedings under the TCA do not violate the Seventh
       Amendment ........................................................................................ 13

     A.   The TCA vindicates public rights that fall outside the scope of the
           Seventh Amendment .................................................................... 13

     B.   *Jarkesy* does not dictate a jury trial for TCA proceedings .................... 15

   III.   Vaping Dragon is not entitled to extraordinary relief ............................ 18

     A.   No irreparable harm will befall Vaping Dragon before a merits ruling .......... 18

     B.   The public interest disfavors immediate relief for Vaping Dragon .................. 21

CONCLUSION ..................................................................................................... 21

## TABLE OF AUTHORITIES

### Cases

*62 Cases, More or Less, Each Containing Six Jars of Jam v. United States,*
  340 U.S. 593 (1951) ........................................................................................ 16

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .......................................................................................... 6

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) .................................................................................. passim

*Ayele v. Dist. of Columbia,*
  704 F. Supp. 3d 231 (D.D.C. 2023) ............................................................ 19

*Big Time Vapes, Inc. v. FDA,*
  963 F.3d 436 (5th Cir. 2020) ......................................................... 3, 14, 21

*Blankenship v. Fin. Indus. Regul. Auth.,*
  No. CV 24-3003, 2024 WL 4043442 (E.D. Pa. Sept. 4, 2024) ............ 9, 10

*Burgess v. FDIC,*
  639 F. Supp. 3d 732 (N.D. Tex. 2022) ....................................................... 19

*Canal Auth. of State of Fla. v. Callaway,*
  489 F.2d 567 (5th Cir. 1974) ...................................................................... 20

*Cap. Traction Co. v. Hof,*
  174 U.S. 1 (1899) ..................................................................................... 16, 17

*Chambless Enters., LLC v. Redfield,*
  508 F. Supp. 3d 101 (W.D. La. 2020) .................................................. 18, 19

*Crowell v. Benson,*
  285 U.S. 22 (1932) .................................................................................. 13, 14

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.,*
  108 F.4th 194 (3d Cir. 2024) ................................................................. 18, 19

*Diamond Door Co. v. Lane-Stanton Lumber Co.,*
  505 F.2d 1199 (9th Cir. 1974) .................................................................... 10

*Dimick v. Schiedt,*
  293 U.S. 474 (1935) ..................................................................................... 10

*Elgin v. Dep't of Treasury,*
  567 U.S. 1 (2012) .......................................................................................... 11

*Elrod v. Burns,*
  427 U.S. 347 (1976) ..................................................................................... 19

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
    762 F.2d 464 (5th Cir. 1985) ............................................................................ 18

*Fid. & Deposit Co. of Md. v. United States*,
    187 U.S. 315 (1902) .......................................................................................... 10

*Fitzgerald v. U. S. Lines Co.*,
    374 U.S. 16 (1963) ............................................................................................ 17

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) .............................................................................................. 7

*Hains v. Pointe Coupee Par. Gov't*,
    No. CV 22-835-SDD-RLB, 2023 WL 7324077 (M.D. La. Nov. 7, 2023) .......................... 19

*Heart of Atlanta Motel, Inc. v. United States*,
    85 S. Ct. 1 (1964) .............................................................................................. 21

*Houston v. St. Louis Independent Packaging Co.*,
    249 U.S. 479 (1919) .................................................................................... 13, 16

*Huff & Puffers, LLC v. FDA*,
    No. 8:24-cv-02110-JVS-JDE, 2025 WL 1092696 (C.D. Cal. Feb. 27, 2025) ........... 11, 12, 20

*In re Peterson*,
    253 U.S. 300 (1920) .................................................................................. 10, 12, 20

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ............................................................................................ 7

*McMullen v. City Council of Charleston*,
    1 S.C.L. 46 (S.C. Ct. C.P. 1787) ........................................................................ 17

*Millennia Hous. Mgmt. v. U.S. Dep't of Hous. & Urb. Dev.*,
    No. 1:24-CV-02084, 2025 WL 1222589 (N.D. Ohio Apr. 28, 2025) ................................ 18

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
    18 How. 272 (1855) ............................................................................................ 7

*Mut. Fire Ins. v. Booth*,
    No. 93-2704, 1994 WL 242549 (5th Cir. 1994) ...................................................... 20

*Nexstar Media, Inc. Grp. v. NLRB*,
    No. 4:24-CV-01415, 2024 WL 4127090 (N.D. Ohio Aug. 26, 2024) ............................ 9, 10

*Nken v. Holder*,
    556 U.S. 418 (2009) .......................................................................................... 21

*Oceanic Steam Navigation Co. v. Stranahan*,
    214 U.S. 320 (1909) .................................................................................... 15, 18

*Oglesby v. Terminal Transp. Co.*,
    543 F.2d 1111 (5th Cir. 1976) ............................................................................ 12

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
    584 U.S. 325 (2018) ........................................................................... 7

*Prewitt v. McDonough,*
    No. CV 21-2243 (RDM), 2025 WL 42744 (D.D.C. Jan. 7, 2025) ........................................ 18

*Robinson v. Ardoin,*
    86 F.4th 574 (5th Cir. 2023) ................................................................ 7

*SEC v. Jarkesy,*
    603 U.S. 109 (2024) ....................................................................... passim

*Sheffield v. Bush,*
    604 F. Supp. 3d 586 (S.D. Tex. 2022) .............................................. 19

*Sheline v. Dun & Bradstreet Corp.,*
    948 F.2d 174 (5th Cir. 1991) ................................................................ 6

*Starbucks Corp. v. McKinney,*
    602 U.S. 339 (2024) .......................................................................... 6

*The Samuel,*
    14 U.S. 9 (1816) ............................................................................. 17

*The Sarah,*
    21 U.S. 391 (1823) .......................................................................... 17

*The Ship Anna,*
    1 Dall. 197 (Penn. Ct. C.P. 1787) ....................................................... 17

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985) ......................................................................... 14

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ........................................................................ 8, 9

*Tull v. United States,*
    481 U.S. 412 (1987) ......................................................................... 10

*United States v. ERR, LLC,*
    35 F.4th 405 (5th Cir. 2022) ............................................................. 20

*United States v. Stanfill El,*
    714 F.3d 1150 (9th Cir. 2013) ........................................................... 16

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981) .......................................................................... 6

*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n,*
    259 F.2d 921 (D.C. Cir. 1958) ........................................................... 21

*Vape Central Group, LLC v. FDA,*
    No. 24-3354 (RDM), 2025 WL 637416 (D.D.C. Feb. 27, 2025) ................................. 11, 12, 20

*VHS Acquisition Subsidiary No. 7. v. NLRB*,
  No. 1:24-cv-02577, 2024 WL 4817175 (D.D.C. Nov. 17, 2024) .......................................... 9

*W. Elec. Co. v. Milgo Elec. Corp.*,
  573 F.2d 255 (5th Cir. 1978) ....................................................................... 19, 20

*Waring v. Clarke*,
  46 U.S. 441 (1847) ......................................................................................... 17

*White v. Carlucci*,
  862 F.2d 1209 (5th Cir. 1989) ................................................................. 18, 21

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................................ 6

**Statutes**

Family Smoking Prevention and Tobacco Control Act,
  Pub. L. No. 111-31, 123 Stat. 1776 (2009) .......................................... 1, 3

Meat Inspection Act of 1906,
  Pub. L. No. 59-382, 34 Stat. 669 ....................................................... 13

21 U.S.C. §
  321(rr) ............................................................................................... 3
  331(c) ............................................................................................... 16
  331(k) ........................................................................................... 15, 16
  333(f)(5) ..................................................................................... 4, 15, 16
  333(f)(6) .................................................................................. 4, 8, 9, 14
  333(f)(9) ........................................................................................... 4
  387a(b) ............................................................................................. 3
  387b(6) ..................................................................................... 15, 16, 17
  387c(a)(6) ................................................................................... 15, 16
  387j ................................................................................................. 14
  387j(a)(1)-(2) .................................................................................. 4

28 U.S.C. § 1331 .............................................................................. 8

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................... 6

**Regulations**

21 C.F.R. §
  17 ..................................................................................................... 4
  17.3(c) ............................................................................................. 11
  17.17(a)-(b) ..................................................................................... 11
  17.17(b) ...................................................................................... 10, 20
  17.19(c) ............................................................................................. 9

17.47(a) ........................................................................................................................... 11

**Other Authorities**

81 Fed. Reg. 28,974 (May 10, 2016) .......................................................................... 3

Asahel Stearns et al., *General Laws of Massachusetts* (1823) ............................................ 16, 17

INTRODUCTION

The Vaping Dragon, LLC, sells electronic nicotine delivery system (ENDS) products. It is therefore subject to the Federal Food, Drug, and Cosmetic Act, as amended by the Family Smoking Prevention and Tobacco Control Act (TCA), Pub. L. No. 111-31, 123 Stat. 1776 (2009). The TCA established a comprehensive framework for federal regulation of tobacco products, including a requirement for premarket authorization of new tobacco products. The TCA also provides a mechanism whereby violations of tobacco-product requirements are initially determined in an administrative forum with judicial review by the courts of appeals. Vaping Dragon is currently involved in such an administrative proceeding.

FDA warned Vaping Dragon in 2023 to stop selling unauthorized ENDS products. Yet, in September 2024, an FDA inspector observed at the store an unauthorized ENDS product for sale. The agency's Center for Tobacco Products (CTP) then initiated, under the TCA, an administrative proceeding for a civil money penalty. Vaping Dragon argues the administrative proceeding violates the Seventh Amendment right to a jury trial in suits at common law. And it asks for a preliminary injunction staying the administrative proceeding that Congress expressly authorized.

For starters, this Court should not even reach the merits for lack of subject-matter jurisdiction. The TCA vests in the courts of appeals the jurisdiction to review final orders in administrative enforcement proceedings. This special statutory review scheme precludes the Court from entertaining jurisdiction over Vaping Dragon's collateral attack. Vaping Dragon may obtain review of any Seventh Amendment claim in the court of appeals at the conclusion of the administrative proceeding.

Even if the Court reaches the merits, longstanding Supreme Court precedent recognizes that Congress may assign the initial determination of public rights to the Executive Branch without running afoul of the Seventh Amendment. Public rights may derive from public-health statutes, of which the TCA is a paradigmatic example. Thus,

1

the administrative determination of TCA violations, as well as the potential assessment of a civil penalty, fits comfortably within the bounds of the public rights doctrine.

The Supreme Court's decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024), is not to the contrary. Unlike the garden-variety fraud claims at issue in *Jarkesy*, the TCA's tobacco-product requirements, including the prohibition against receiving an adulterated or misbranded tobacco product in interstate commerce and delivering or proffering it for delivery for pay or otherwise, have no relation to common law actions at the founding. Thus, neither the Seventh Amendment itself nor the *Jarkesy* decision entitles Vaping Dragon to a jury trial for the alleged TCA violations.

Whatever else, Vaping Dragon is not entitled to the extraordinary relief of a preliminary injunction. Apart from the unlikelihood of success on the merits, Vaping Dragon will not suffer irreparable harm before this Court rules on the merits. While FDA's motion for summary judgment will be fully briefed next month, the administrative proceeding remains pending with no hearing date set. Indeed, no Seventh Amendment right could even accrue yet because no disputed issues of fact are known. Plus, Seventh Amendment injuries are reparable; courts commonly remand claims for a jury trial. Vaping Dragon's failure to establish irreparable harm is sufficient to deny relief.

The public interest also strongly disfavors the extraordinary relief that Vaping Dragon seeks. The company allegedly is selling adulterated and misbranded ENDS products, which lack the requisite FDA marketing authorization. That is the very harm Congress sought to counter through the TCA—a harm that poses a grave threat to the public health of the nation and especially its youth. Vaping Dragon has not shown that its singular, self-serving interest in avoiding responsibility for that conduct outweighs the congressional judgment about the need for such proceedings to occur.

The Court should grant FDA's motion for summary judgment and deny Vaping Dragon's motion for a preliminary injunction.

2

BACKGROUND

I.     **Family Smoking Prevention and Tobacco Control Act**

The TCA amended the Federal Food, Drug, and Cosmetic Act to establish a comprehensive regulatory scheme for tobacco products. Pub. L. No. 111-31, 123 Stat. 1776 (2009). Because "[t]obacco use is the foremost preventable cause of premature death in America" and "past efforts to restrict advertising and marketing of tobacco products have failed adequately to curb tobacco use by adolescents," Congress found that "comprehensive restrictions on the sale, promotion, and distribution of such products are needed." *Id.* § 2(6), (13), 123 Stat. at 1777. And it vested in "FDA broad authority to address 'the public health and societal problems caused by the use of tobacco products.'" *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 438 (5th Cir. 2020) (quoting TCA, § 2(7), 123 Stat. at 1777).

At the time of enactment, the TCA "appl[ied] to all cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco." 21 U.S.C. § 387a(b). But Congress also authorized FDA to deem "any other tobacco products . . . to be subject to" the TCA "by regulation." *Id.* § 387a(b). In May 2016, FDA exercised that authority by issuing a regulation—known as the Deeming Rule—that brought ENDS products, as well as their components and parts, within the TCA's ambit. 81 Fed. Reg. 28,974, 28,975 (May 10, 2016); *see Big Time Vapes*, 963 F.3d at 439-40.

Among other things, the TCA "prohibits manufacturers from introducing any 'new tobacco product' without premarket authorization." *Big Time Vapes*, 963 F.3d at 439 (quoting 21 U.S.C. § 387j). A "new tobacco product" is "any product made or derived from tobacco, or containing nicotine from any source, that is intended for human consumption, including any component, part, or accessory of a tobacco product," which "was not commercially marketed . . . as of February 15, 2007." 21 U.S.C. §§ 321(rr),

3

387j(a)(1)-(2). A new tobacco product that has not undergone premarket review and received FDA marketing authorization is deemed to be adulterated. *Id.* § 387b(6).

A new tobacco product is exempt from the premarket authorization requirement only if there is a substantial-equivalence order or a substantial-equivalence exemption order in effect for such product. *Id.* §§ 387j(a)(2)(A), 387e(j)(3)(A). A new tobacco product is misbranded if a "notice or other information," such as a substantial-equivalence report or an abbreviated report, "respecting it was not provided as required" under these pathways. *Id.* § 387c(a)(6). It is unlawful to receive an adulterated or misbranded tobacco product in interstate commerce and deliver or proffer it for delivery for pay or otherwise. *Id.* § 331(c).

To help enforce the TCA, Congress empowered the Secretary of Health and Human Services (who has delegated authority to the Commissioner of Food and Drugs) to determine violations of tobacco-product requirements through administrative proceedings. *Id.* §§ 333(f)(5), 333(f)(9), 393(d)(2); 21 C.F.R. pt. 17. If a violation occurred, the Commissioner may impose a "civil penalty" or, in certain instances, a "no-tobacco-sale order." 21 U.S.C. § 333(f)(5), (9). A person against whom a civil penalty is assessed, or a no-tobacco-sale order is imposed, after exhausting the administrative appeal process, may seek judicial review in the United States Court of Appeals for the District of Columbia Circuit or in any other circuit in which such person resides or transacts business. *Id.* § 333(f)(6).

Civil money penalties are one of CTP's most effective tools to enforce the TCA. Through May 31, 2025, CTP has brought more than 37,000 administrative actions seeking a civil money penalty, 279 of which involve unauthorized new tobacco products. FDA0031-32 (Verbeten Decl. ¶¶ 10, 17).[1] Of the latter, 146 were against brick-

---

[1] Record citations are to Defendants' combined appendix in opposition to Plaintiff's motion for a preliminary injunction and in support of Defendants' motion for summary judgment.

and-mortar retailers like Vaping Dragon for receiving unauthorized new tobacco products in interstate commerce and holding them for sale. FDA0032 (Verbeten Decl. ¶ 17). Proceedings such as these to ensure compliance with the TCA's premarket authorization requirements for ENDS products are among FDA's highest enforcement priorities because these products, which contain harmful chemicals and are highly addictive, are particularly popular with youth. FDA0030 (Verbeten Decl. ¶¶ 7-8).

## II. Administrative proceeding against Vaping Dragon

Vaping Dragon sells ENDS products at its retail establishment in Abilene, Texas. FDA0003. In September 2023, CTP sent Vaping Dragon a Warning Letter about its sale of new tobacco products that were adulterated and misbranded because they lacked the required FDA marketing authorization. FDA0004-5; FDA0033 (Verbeten Decl. ¶ 19); FDA0035-38 (warning letter). Specifically, Vaping Dragon offered for sale a new e-liquid product, Why So Cereal, without the required premarket authorization. FDA0033 (Verbeten Decl. ¶ 19). The Warning Letter stated that the identified violations "do not necessarily constitute an exhaustive list," and advised Vaping Dragon to "take prompt action" to address the violations and to "take any necessary actions to bring your tobacco products into compliance with the [FDCA]." FDA0037.

In September 2024, CTP again inspected Vaping Dragon's establishment and observed for sale an adulterated and misbranded ENDS product—specifically, a Geek Bar Pulse Berry Bliss 50mg/ml. *See* FDA0004; FDA0033 (Verbeten Decl. ¶ 20). Based on this inspection, CTP commenced an administrative proceeding against Vaping Dragon on December 27, 2024, for receiving in interstate commerce an ENDS product that lacks the requisite marketing authorization and offering that product for sale. FDA0006. CTP sought a $21,348 civil penalty. FDA0006.

On January 27, 2025, Vaping Dragon answered the administrative complaint, asserting that "the Seventh Amendment prohibits the Departmental Appeals Board from adjudicating this case." FDA0007.

### III. Vaping Dragon's lawsuit against FDA

On May 20, 2025, Vaping Dragon filed this lawsuit on the sole ground that the "administrative proceeding violates [its] right to a jury trial under the Seventh Amendment." *See* Compl., ECF No. 1, at ¶ 1. Vaping Dragon simultaneously moved for a preliminary injunction. *See* PI Mot., ECF No. 3. FDA now opposes Vaping Dragon's preliminary injunction motion and moves for summary judgment.

## LEGAL STANDARD

A court shall grant summary judgment under Rule 56 when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And "summary judgment is appropriate where the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Its "purpose . . . is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "[A] plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20, 22); *see*

*Robinson v. Ardoin*, 86 F.4th 574, 587 (5th Cir. 2023). The movant "carries the burden of persuasion" on each of these factors. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

ARGUMENT

When Congress creates a special statutory "review scheme for agency action," it "divests district courts of their ordinary jurisdiction over the covered cases." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023). The TCA contains such a scheme, which directs to the courts of appeals all challenges to administrative orders imposing civil money penalties. In accordance with this statutory process, Vaping Dragon may only obtain review of this Seventh Amendment claim in the court of appeals. The Court therefore lacks subject-matter jurisdiction to entertain this collateral attack on the pending administrative proceeding.

But should the Court consider the merits, the Seventh Amendment claim fails. The Supreme Court has long held that Congress may properly assign matters of "public rights" to non-Article III tribunals. *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1855); *see Jarkesy*, 603 U.S. at 128 (citing *Murray's Lessee*). For such matters, "the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 345 (2018) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 54 (1989)). This principle applies here.

Administrative proceedings under the TCA involve public rights, protecting the public health against violations of the comprehensive tobacco-product requirements. Because these proceedings are not "made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789," *Jarkesy*, 603 U.S. at 128, "the Seventh Amendment does not entitle the parties"—including Vaping Dragon—"to a jury trial," *Granfinanciera*, 492 U.S. at 42 n.4.

7

## I.    The TCA divests this Court of subject-matter jurisdiction

Although 28 U.S.C. § 1331 generally vests "jurisdiction for claims 'arising under' federal law" in the district courts, a "special statutory review scheme . . . may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Axon Enter.*, 598 U.S. at 185. Divestiture may occur "implicitly" when Congress "specif[ies] a different method to resolve claims about agency action." *Id.* The typical example is a statute that provides for "review in a court of appeals following the agency's own review process." *Id.* The review scheme for TCA administrative proceedings, including the one against Vaping Dragon, fits that mold. *See* 21 U.S.C. § 333(f)(6) ("Any person . . . aggrieved by an order assessing a civil penalty or the imposition of a no-tobacco-sale order may file a petition for judicial review of such order with the United States Court of Appeals for the District of Columbia Circuit or for any other circuit in which such person resides or transacts business.").

Given this provision, the question becomes whether Vaping Dragon's Seventh Amendment claim is "of the type Congress intended to be reviewed within this statutory structure." *Axon Enter.*, 598 U.S. at 186 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994)). "[T]hree considerations," which are "commonly known now as the *Thunder Basin* factors," guide the inquiry. *Id.* None of them favor district court jurisdiction over this collateral attack on FDA's proceeding.

*First*, "precluding district court jurisdiction" here would not "'foreclose all meaningful judicial review' of the claim." *Axon Enter.*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212–13). On the contrary, "adequate judicial review does not usually demand a district court's involvement" because "a court of appeals can alone 'meaningfully address[]' a party's claims." *Axon Enter.*, 598 U.S. at 190 (quoting *Thunder*

*Basin*, 510 U.S. at 215).[2] *Jarkesy* demonstrates the point. There, the Seventh Amendment claim reached the Supreme Court after direct review by the Fifth Circuit of the Securities and Exchange Commission's (SEC) final order. *See* 603 U.S. at 119-20.

Vaping Dragon may obtain review of its Seventh Amendment claim the same way as in *Jarkesy*. If and when the agency issues an adverse decision, Vaping Dragon may present the claim to the court of appeals. *See* 21 U.S.C. § 333(f)(6); *see also Tex. Tobacco Barn LLC v. U.S. Dep't of Health & Human Servs.*, No. 25-60200, ECF No. 1-1 (5th Cir. Apr. 16, 2025) (petition for review of final decision in TCA proceeding on Seventh Amendment grounds, among others). Thus, the first *Thunder Basin* factor does not support district court jurisdiction. *See VHS Acquisition Subsidiary No. 7. v. NLRB*, No. 1:24-cv-02577, 2024 WL 4817175, at *3 (D.D.C. Nov. 17, 2024) (ruling that "[t]he first *Thunder Basin* factor . . . points towards a lack of district court jurisdiction" because plaintiff "can still receive 'meaningful review' of its Seventh Amendment challenge" in the "circuit court"); *Blankenship v. Fin. Indus. Regul. Auth.*, No. CV 24-3003, 2024 WL 4043442, at *2 (E.D. Pa. Sept. 4, 2024) (noting how "*Jarkesy* came up on direct review, not collateral attack," so "a finding of no jurisdiction in this court will not foreclose all 'meaningful' judicial review" of Seventh Amendment claim); *Nexstar Media, Inc. Grp. v. NLRB*, No. 4:24-CV-01415, 2024 WL 4127090, at *5 (N.D. Ohio Aug. 26, 2024) (ruling that first "*Thunder Basin* factor weighs against jurisdiction" of Seventh Amendment claim because "issue may be raised in the Court of Appeals which will have authority to modify" agency's "ruling or set it aside").

*Second*, the Seventh Amendment claim is not "wholly collateral to [the] statute's review provisions." *Axon Enter.*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212).

---

[2] It also does not demand "the agency itself" possess the power to "consider[] or remed[y] the party's claim." *Axon Enter.*, 598 U.S. at 190 n.2. So it is irrelevant that the administrative law judge "does not have the authority to find Federal statutes or regulations invalid." 21 C.F.R. § 17.19(c).

Vaping Dragon does not "object to [FDA's] power to proceed at all," only to something "particular about how that power" might be "wielded." *Axon Enter.*, 598 U.S. at 192-93; *see also Blankenship*, 2024 WL 4043442, at *6-7 (explaining that plaintiff's Seventh Amendment "claims are not wholly collateral because they do not challenge FINRA's existence, but instead depend on FINRA's proceedings and the interpretation of its rules"). Specifically, the Seventh Amendment claim centers on the agency's ability to serve "as a fact-finding body." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).

But the administrative proceeding may conclude (for or against Vaping Dragon) without any Seventh Amendment right even conceivably "accru[ing]." *Fid. & Deposit Co. of Md. v. United States*, 187 U.S. 315, 320 (1902). For example, if "there is no genuine issue as to any material fact," the TCA violation may be determined through the administrative "summary decision" process. 21 C.F.R. § 17.17(b); *see, e.g., In re Peterson*, 253 U.S. 300, 310 (1920) ("No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined."); *Diamond Door Co. v. Lane-Stanton Lumber Co.*, 505 F.2d 1199, 1203 (9th Cir. 1974) ("[T]he Seventh Amendment right to a trial by jury does not preclude the granting of a summary judgment where there is no genuine issue of material fact."). And "the Seventh Amendment does not require a jury trial" for "determination of a civil penalty" amount. *Tull v. United States*, 481 U.S. 412, 427 (1987).[3] Because Vaping Dragon's claim turns on "the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision," the claim is not collateral to the final order subject to review. *Axon Enter.*, 598 U.S. at 193; *see Nexstar Media*, 2024 WL 4127090, at *5 (finding that Seventh Amendment claim was not collateral to agency's administrative order).

*Third* and relatedly, the Seventh Amendment claim is "intertwined with or embedded in matters on which" the agency adjudicators are "expert." *Axon Enter.*, 598

---

[3] In some of CTP's civil money penalty proceedings, liability is not contested and only the amount of civil money penalty is at issue. FDA0032 (Verbeten Decl. ¶ 15).

U.S. at 195; *see* 21 C.F.R. §§ 17.3(c), 17.47(a) (identifying agency adjudicators). Administrative enforcement proceedings under the TCA regularly require these officials to resolve "threshold questions that may accompany a constitutional claim," *Elgin v. Dep't of Treasury*, 567 U.S. 1, 22 (2012), such as whether any genuine factual dispute exists about a statutory violation, *see* 21 C.F.R. §§ 17.17(a)-(b), 17.47(a). The resolution of these "preliminary questions . . . may obviate the need to address the constitutional challenge." *Elgin*, 567 U.S. at 22-23. Thus, the Seventh Amendment claim is not wholly divorced from issues in the administrative proceeding on which the agency's expertise "could be brought to bear." *Axon Enter.*, 598 U.S. at 195 (quotation omitted).

The district courts for the District of Columbia and the Central District of California recently reached the same conclusion on identical Seventh Amendment claims. In *Vape Central Group, LLC v. FDA*, No. 24-3354 (RDM), 2025 WL 637416, at *9 (D.D.C. Feb. 27, 2025), "the Court [wa]s convinced . . . that Congress intended to leave [Seventh Amendment] challenges . . . to the prescribed statutory review procedure" in the TCA. That's because all "the *Thunder Basin* factors weigh against district court jurisdiction." *Id.*; *see id.* at *5-9 (analyzing factors). The court in *Huff and Puffers, LLC v. FDA*, No. 8:24-cv-02110-JVS-JDE, 2025 WL 1092696, at *6 (C.D. Cal. Feb. 27, 2025), agreed that "the *Thunder Basin* factors preclude [its] jurisdiction over Huff & Puffers' [Seventh Amendment] claim." *See id.* at *4-5 (analyzing factors). Notwithstanding the potential ramifications of *Jarkesy*, "the Court must respect FDA's statutory review scheme and the implicit jurisdictional bounds created by Congress." *Id.* at *6. This Court should follow the reasoning of *Vape Central* and *Huff & Puffers*.[4]

---

[4] In *Wulferic LLC d/b/a Vapor Lab v. FDA*, No. 4:24-cv-01183-O (N.D. Tex.), a similar Seventh Amendment challenge, FDA's motion for summary judgment remains pending.

Even though none of the three *Thunder Basin* factors or the relevant precedent supports this collateral attack, Vaping Dragon suggests that *Axon Enterprise* does. *See* Compl. ¶¶ 26-30, 59. It does not. Unlike *Axon Enterprise*, Vaping Dragon does not challenge "the structure or very existence of" FDA; nor does it contend the "agency is wielding authority unconstitutionally in all or a broad swath of its work." 598 U.S. at 189; *see Vape Central*, 2025 WL 637416, at *6 (distinguishing *Axon Enterprise*); *Huff & Puffers*, 2025 WL 1092696, at *4 (same). Vaping Dragon also does not present the rare sort of "here-and-now injury" irremediable on judicial review that drove the analysis in *Axon Enterprise*. *Id.* at 191.

The Seventh Amendment is not even potentially implicated "unless and except so far as there are issues of fact to be determined." *In re Peterson*, 253 U.S. at 310; *see, e.g.*, *Oglesby v. Terminal Transp. Co.*, 543 F.2d 1111, 1113 (5th Cir. 1976) (recognizing there is "[n]o constitutional right to a [jury] trial" when no "dispute of material fact exists which a trial could resolve"). So the manifestation of any Seventh Amendment claim depends on how the administrative proceeding unfolds; the claim does not exist "irrespective of [the proceeding's] outcome, or of other decisions made within it." *Axon Enter.*, 598 U.S. at 192; *see Vape Central*, 2025 WL 637416, at *8 ("The possibility that the relevant facts will not be disputed matters with respect to a Seventh Amendment defense; if the facts are undisputed, Vape Central's Seventh Amendment argument fails at the outset . . . ."). And the "Seventh Amendment right is not effectively lost by deferring review to the circuit court." *Huff & Puffers*, 2025 WL 1092696, at *4. If the court of appeals agrees with Vaping Dragon, "it can remand the case for proceedings consistent with the court's opinion." *Id.*; *see Vape Central*, 2025 WL 637416, at *5 (noting "the company can ask the court of appeals to vacate the civil penalty order"). Therefore, *Axon Enterprise* does not permit Vaping Dragon to circumvent the TCA's special statutory review scheme.

## II.   Administrative proceedings under the TCA do not violate the Seventh Amendment

Even if the Court has jurisdiction over this collateral attack, Vaping Dragon's Seventh Amendment argument is meritless.

### A.   The TCA vindicates public rights that fall outside the scope of the Seventh Amendment

The Supreme Court has long recognized "a class of cases concerning what" it "called 'public rights.'" *Jarkesy*, 603 U.S. at 128. When a public right is at issue, "Congress may assign the matter for decision to an agency without a jury, consistent with the Seventh Amendment." *Id.* at 127. Although the Supreme Court has not delineated all possible matters that may be considered "public rights," *id.* at 128-29, "[f]amiliar illustrations" of matters that may be assigned to the Executive Branch for determination include "taxation, immigration, the public lands, [and] *public health*," *Crowell v. Benson*, 285 U.S. 22, 51 (1932) (emphasis added); *see Jarkesy*, 603 U.S. at 130 (citing examples from *Crowell*, 285 U.S. at 51)

In discussing the "public health" category in *Crowell*, 285 U.S. at 51 n.13, the Supreme Court cited its earlier decision in *Houston v. St. Louis Independent Packaging Co.*, 249 U.S. 479, 484 (1919). That case considered the Secretary of Agriculture's authority under the Meat Inspection Act of 1906, Pub. L. No. 59-382, 34 Stat. 669, to determine, as "a question of fact," whether certain foods have been labeled in a "false and deceptive" manner. *See Houston*, 249 U.S. at 480-81. If so found by the Secretary, those foods could not be sold in interstate or foreign commerce. *See id.* The Supreme Court rejected a challenge to this regime, holding that Congress constitutionally "committed to the head of the department, constantly dealing with such matters, the discretion to determine" whether the foods' labeling "would be false and deceptive or not." *Id.* at 487.

Like the Meat Inspection Act, the TCA is a paradigmatic public-health statute enacted to uphold uniquely sovereign interests. *See* TCA, § 2(10), (29), 123 Stat. at 1778

(finding legislation necessary "to address the public health crisis created by actions of the tobacco industry" and the "sale, distribution, marketing, advertising, and use of tobacco products are activities in and substantially affecting interstate commerce"); *see also id.* § 2(6), (13), 123 Stat. at 1777 ("[t]obacco use is the foremost preventable cause of premature death in America" and "past efforts to restrict advertising and marketing of tobacco products have failed adequately to curb tobacco use by adolescents"); § 3(2), 123 Stat. at 1781 (empowering FDA through the TCA "to address issues of particular concern to public health officials"). The TCA's "detailed framework for regulating tobacco," the Fifth Circuit acknowledged, reflects this "public-health purpose." *Big Time Vapes*, 963 F.3d at 438.

Congress further "recogniz[ed]" FDA "as the primary Federal regulatory authority with respect to the manufacture, marketing, and distribution of tobacco products." TCA, § 3(1), 123 Stat. at 1781. And consistent with how the agency "routinely makes decisions about whether and how products may be marketed in the United States," *id.*, § 2(44), 123 Stat. at 1781, an essential requirement of the TCA is that new tobacco products undergo premarket review to ensure (among other things) their marketing would be appropriate for the protection of the public health, *see* 21 U.S.C. § 387j. Accordingly, the TCA falls well within the bounds of the public rights doctrine. *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 589 (1985) (noting that "characteristics of a 'public' right" include "serv[ing] a public purpose as an integral part of a program safeguarding the public health," as well as congressional authorization of "an agency administering a complex regulatory scheme to allocate costs and benefits among voluntary participants in the program" and "to condition issuance of registrations or licenses on compliance with agency procedures").

Because the TCA deals in public rights, under the Supreme Court's longstanding precedent, determinations under the statute may properly be made in the first instance by the Executive Branch, *Crowell*, 285 U.S. at 51, subject to judicial review, 21 U.S.C.

14

§ 333(f)(6). Akin to the scheme for Executive Branch determinations upheld in *Houston*, Congress permissibly assigned the Secretary of Health and Human Services to determine whether new tobacco products were adulterated because they lacked the requisite premarket authorization and to determine whether they were misbranded because they lacked a substantial equivalence report or an abbreviated report. *See* 21 U.S.C. §§ 331(k), 387b(6), 387c(a)(6). Further, Congress could—and did—grant the Secretary "the power to enforce" the TCA's prohibitions with civil money "penalties without the necessity of invoking the judicial power" or trial by jury. *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909); *see* 21 U.S.C. § 333(f)(5)(A); *Jarkesy*, 603 U.S. at 129 (recognizing that *Oceanic Steam Navigation Co.* upheld Congress's decision to "enforce [statutory] prohibitions with administrative penalties assessed without a jury"). Accordingly, Congress's decision that the Executive Branch should initially determine violations of public rights under the TCA comports with like-statutory schemes that have met Supreme Court muster for more than a century.

### B.  *Jarkesy* does not dictate a jury trial for TCA proceedings

Vaping Dragon eschews these longstanding Supreme Court precedents, focusing instead on *Jarkesy*. *See* PI Mem., ECF No. 3-1, at 6. *Jarkesy*, however, simply recognized the Seventh Amendment applies to a case that "from its nature, is the subject of a suit at the common law." 603 U.S. at 132 (quotation omitted). Therefore, the SEC could not impose civil penalties in an administrative proceeding based on statutory claims that "replicate common law fraud." *Id.* at 120. Such claims "target the same basic conduct as common law fraud, employ the same terms of art, and operate pursuant to similar legal principles." *Id.* at 134.

Unlike the fraud in *Jarkesy*, an administrative TCA claim is not "modeled on common law." *Id.* at 136. CTP seeks a civil money penalty from Vaping Dragon for receiving in interstate commerce and proffering for sale an ENDS product that lacks the

required premarket authorization, causing the new tobacco product to become adulterated and misbranded. FDA0006; FDA0034 (Verbten Decl. ¶ 21); *see* 21 U.S.C. §§ 331(c), 333(f)(5)(A), 387b(6), 387c(a)(6). Actions to redress the manufacture and distribution of new tobacco products without the necessary government authorization to market are not "made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789." *Jarkesy*, 603 U.S. at 128 (quotation omitted). Rather, these efforts to keep adulterated and misbranded products "out of the channels of commerce" were birthed by "the circumstances of modern industrialism." *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951). Directly analogous to the statutory scheme to protect the public health in *Houston*, 249 U.S. at 480-84, administrative TCA claims "bring no common law soil with them," *Jarkesy*, 603 U.S. at 137.

Although Vaping Dragon contends that "claims for the sale of 'adulterated' products . . . were being tried in courts of law by the time the Seventh Amendment was adopted," PI Mem. 9, its historical evidence does not establish the point. Vaping Dragon cites a 1785 Massachusetts criminal statute but neglects that the Seventh Amendment reflects "the rules of the common law of England, and not the rules of that law as modified by local statute or usage in any of the states." *Cap. Traction Co. v. Hof*, 174 U.S. 1, 8 (1899). And the 1785 act is a *criminal* statute. *See* Asahel Stearns, et al., *General Laws of Massachusetts* 182 (1823) ("any person . . . convicted . . . shall be punished by fine, imprisonment, standing in the pillory, and binding to the good behavior"). A "criminal case" is "not affected by the [S]eventh [A]mendment," *Cap. Traction Co.*, 174 U.S. at 18, even if it "might result in a monetary award," *United States v. Stanfill El*, 714 F.3d 1150, 1154-55 (9th Cir. 2013).[5]

---

[5] Even if a criminal statute could somehow shed light on the meaning of the Seventh Amendment, this one does not. "[W]hat matters is the substance of the action,"

A duo of cited 1787 cases also are inapposite. *See* PI Mem. 9. *McMullen v. City Council of Charleston*, 1 S.C.L. 46 (S.C. Ct. C.P. 1787), addressed whether a local Court of Wardens possessed jurisdiction over criminal offences against a "public revenue act of the State" or if such prosecutions were "cognizable only by the Supreme Court throughout the State." *Id.* at 46. Again, as a criminal case, *McMullen* is "not affected by the [S]eventh [A]mendment," and is unrelated to the "the rules of the common law of England." *Cap. Traction*, 174 U.S. at 8, 18.

In the other case—*Phile* qui tam *v. The Ship Anna*, 1 Dall. 197 (Penn. Ct. C.P. 1787)—a Pennsylvania jury found that a merchant vessel was forfeited based on a violation of state revenue law. *Id.* at 205, 207-08. However, vessel "seizures for a breach of the revenue laws" were "cases of Admiralty and maritime jurisdiction." *The Sarah*, 21 U.S. 391, 395–96 n.c (1823) (Marshall, C.J.); *see, e.g.*, *The Samuel*, 14 U.S. 9, 19 n.h (1816) (Marshall, C.J.). And "civil causes in admiralty" were not "embraced in the [S]eventh [A]mendment." *Waring v. Clarke*, 46 U.S. 441, 460 (1847).[6] Thus, none of Vaping Dragon's historical evidence actually roots an administrative claim for TCA violations in common law soil.

Finally, to the extent Vaping Dragon suggests *Jarkesy* marked the end of the public rights doctrine, *see* PI Mem. 9, that is incorrect. *Jarkesy* expressly declined to "reach the

---

*Jarkesy*, 603 U.S. at 134, and the administrative TCA claim against Vaping Dragon is far afield from the 1785 law. *Compare* 21 U.S.C. § 387b(6) (deeming a new tobacco product adulterated if no marketing authorization is in effect), *with* Stearns, *General Laws of Massachusetts* 182 (prohibiting the sale of "diseased, corrupted, contagious, or unwholesome provisions, whether for meat or drink").

[6] The jury's role in *The Ship Anna* is a red herring for purposes of determining the Seventh Amendment's baseline requirements. Although traditionally "cases of admiralty and maritime jurisdiction" were tried "by the Court," *The Sarah*, 21 U.S. at 394, the Seventh Amendment does not "forbid jury trials" in admiralty cases, *Fitzgerald v. U. S. Lines Co.*, 374 U.S. 16, 20 (1963). Nor does it "require jury trials in admiralty cases." *Id.* So Pennsylvania's choice to shift power over the forfeiture claim, "formerly exercised by a single Judge," to a jury says nothing about what the Seventh Amendment requires. *The Ship Anna*, 1 Dall. at 208.

suggestion" that precedent "allow[ing] the adjudication of civil penalty suits in administrative tribunals" had been overruled. 603 U.S. at 136. The Court simply found such precedent "does not control here" because the SEC's "statutory claim is in the nature of a common law suit." *Id.* at 138 (cleaned up). Indeed, *Jarkesy* recognized that Congress may still provide for Executive determination of cases addressing public rights, including matters involving "the imposition of a monetary penalty." *Id.* at 129 (citing *Oceanic Steam Navigation*, 214 U.S. at 331-34); *see also id.* at 138. So, at most, *Jarkesy* "provided guidance on the scope of" the public rights doctrine, a far cry from invalidating it. *Prewitt v. McDonough*, No. CV 21-2243 (RDM), 2025 WL 42744, at *3 (D.D.C. Jan. 7, 2025); *see Millennia Hous. Mgmt. v. U.S. Dep't of Hous. & Urb. Dev.*, No. 1:24-CV-02084, 2025 WL 1222589, at *9 n.7 (N.D. Ohio Apr. 28, 2025) (rejecting argument that *Jarkesy* overruled case law about the public rights doctrine).

## III. Vaping Dragon is not entitled to extraordinary relief

Because Vaping Dragon is "unlikely to have" established subject-matter jurisdiction and a meritorious Seventh Amendment claim, it cannot satisfy that prerequisite for preliminary injunctive relief. *See Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-71 (5th Cir. 1985). Also, "no injunction may issue" because the company has not "satisfied by independent proof" the element of irreparable harm. *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). And, rounding out the analysis, the public interest cuts against extraordinary relief too.

### A. No irreparable harm will befall Vaping Dragon before a merits ruling

Vaping Dragon suggests that, by alleging a Seventh Amendment claim, it necessarily satisfies the irreparable harm factor. *See* PI Mem. 10. However, as numerous courts within and outside the Fifth Circuit have recognized, irreparable harm is not "automatically presumed where constitutional claims are alleged." *Chambless Enters., LLC v. Redfield*, 508 F. Supp. 3d 101, 120 (W.D. La. 2020); *see, e.g., Del. State Sportsmen's*

*Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3d Cir. 2024)
("Constitutional harm is not necessarily synonymous with the irreparable harm
necessary for issuance of a preliminary injunction.") (cleaned up); *Hains v. Pointe Coupee
Par. Gov't*, No. CV 22-835-SDD-RLB, 2023 WL 7324077, at *6 (M.D. La. Nov. 7, 2023)
("Irreparable harm is also not established simply because Plaintiff has asserted claims
under the Federal Constitution."); *Ayele v. Dist. of Columbia*, 704 F. Supp. 3d 231, 239
(D.D.C. 2023) ("[T]here is no per se rule that the violation of any constitutional right is
inherently irreparable."); *Sheffield v. Bush*, 604 F. Supp. 3d 586, 609 (S.D. Tex. 2022)
(finding plaintiffs' "allegation that their constitutional rights have been violated is not
enough, taken alone, to establish an irreparable injury"). *Contra Burgess v. FDIC*, 639 F.
Supp. 3d 732, 749 (N.D. Tex. 2022) ("This concept that a violation of a constitutional
right in and of itself constitutes irreparable injury has been universally recognized and
is not open to debate.").[7]

To be sure, "the nature of certain constitutional violations, such as violations of the
freedoms of speech and privacy, is such that they necessarily cause irreparable harm."
*Chambless Enters.*, 508 F. Supp. 3d at 120 (quotation omitted). Others, however, involve
harms "that can be cured after final judgment." *Del. State Sportsmen's Ass'n*, 108 F.4th at
205. The Fifth Circuit has placed Seventh Amendment harms into the latter category.
*See W. Elec. Co. v. Milgo Elec. Corp.*, 573 F.2d 255, 256-57 (5th Cir. 1978) (per curiam)
(rejecting argument that plaintiff was "irreparably injured by possible loss of its

---

[7] Vaping Dragon cites *Burgess* for support, *see* PI Mem. 10, but that case was
wrongly decided. *Burgess* relied on *Elrod v. Burns*, 427 U.S. 347 (1976), for the
proposition that "as a matter of law, the deprivation of a constitutional right
'unquestionably constitutes irreparable injury.'" 639 F. Supp. 3d at 749 (quoting *Elrod*,
427 U.S. at 373). *Elrod* solely addressed "[t]he loss of *First Amendment freedoms*," 427 U.S.
at 373 (emphasis added), and is inapplicable to Seventh Amendment claims like those
in *Burgess* and here, *see Ayele*, 704 F. Supp. 3d at 237-39 (recognizing the limited scope of
*Elrod*); *Sheffield*, 604 F. Supp. 3d at 609 (same). Furthermore, *Burgess* did not address the
long line of Fifth Circuit precedent, discussed in this brief, that treats Seventh
Amendment violations as reparable on appeal.

19

constitutional right to jury trial" and thus "entitled to review under the collateral order doctrine" because plaintiff could press claim for "a new trial before a jury" on appeal of final judgment); *see also Mut. Fire Ins. v. Booth*, No. 93-2704, 1994 WL 242549, at *1 (5th Cir. 1994) (per curiam) ("An order denying a demand for a civil jury trial does not fall within the narrow confines of the collateral order doctrine."). If a Seventh Amendment violation occurred, the reviewing court simply remands for a new proceeding. *See, e.g.*, *United States v. ERR, LLC*, 35 F.4th 405, 416 (5th Cir. 2022) (vacating judgment entered after bench trial because claim was subject to Seventh Amendment right to jury trial); *Huff & Puffers*, 2025 WL 1092696, at *4; *Vape Central*, 2025 WL 637416, at *5.

Vaping Dragon's claim of "a 'here-an[d]-now' injury that cannot be undone after that decision-making process takes place" flies in the face of precedent and reality. PI Mem. 10 (quoting *Axon Enter.*, 598 U.S. at 192). The Fifth Circuit has rejected the notion that a litigant is "irreparably injured by possible loss of its constitutional right to jury trial." *W. Elec. Co.*, 573 F.2d at 256. The right to a jury trial, after all, does not "accrue[]," *Fid. & Deposit Co.*, 187 U.S. at 320, "unless and except so far as there are issues of fact to be determined," *In re Peterson*, 253 U.S. at 310. And it remains unknown whether any facts will ever need to be determined in the administrative proceeding against Vaping Dragon. *See Vape Central*, 2025 WL 637416, at *7-8.

Here, no date for a hearing has been set and the proceeding may resolve on an administrative motion for summary decision if there is no genuine issue as to any material fact. FDA0034 (Verbeten Decl. ¶ 23 (citing 21 C.F.R. § 17.17(b))). Meanwhile, briefing on FDA's motion for summary judgment in this case will conclude on July 23, 2025. Given the contingent nature of the Seventh Amendment and the looming completion of summary judgment briefing, Vaping Dragon has not clearly shown "irreparable injury" that jeopardizes "the court's ability to render a meaningful decision on the merits." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

Thus, Vaping Dragon has failed to establish irreparable harm, which alone is grounds for refusing to issue a preliminary injunction. *See White*, 862 F.2d at 1211.

### B.    The public interest disfavors immediate relief for Vaping Dragon

The remaining *Winter* factors—"harm to the opposing party" and "the public interest"— merge because the government opposes the preliminary injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009). By seeking to stay the administrative proceeding expressly authorized by the TCA, *see* PI Mot. 1, Vaping Dragon "in reality" asks the Court for "a suspension of an act" of Congress, *Heart of Atlanta Motel, Inc. v. United States*, 85 S. Ct. 1, 2 (1964) (Black, J., in chambers). The "judicial power to stay an act of Congress, like judicial power to hold that act unconstitutional, is an awesome responsibility calling for the utmost circumspection in its exercise." *Id.* !

That is particularly so "[i]n litigation involving the administration of regulatory statutes designed to promote the public interest." *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). The TCA undoubtedly is such a statute. *See, e.g.*, TCA, § 2(10), (29), 123 Stat. at 1778; *Big Time Vapes*, 963 F.3d at 438 (acknowledging TCA's "public-health purpose"). Accordingly, the public interest does not favor any suspension of its provisions, including those authorizing civil monetary penalties for receiving in interstate commerce and proffering for sale adulterated and misbranded tobacco products, while the Court considers FDA's motion for summary judgment.

### Conclusion

For the foregoing reasons, this Court should deny Vaping Dragon's motion for a preliminary injunction and grant FDA's motion for summary judgment.

June 17, 2025                              Respectfully submitted,

                                          /s/ James W. Harlow
                                          JAMES W. HARLOW
                                          Acting Assistant Director
                                          Consumer Protection Branch
                                          Civil Division
                                          U.S. Department of Justice
                                          PO Box 386
                                          Washington, DC  20044-0386
                                          (202) 514-6786
                                          (202) 514-8742 (fax)
                                          james.w.harlow@usdoj.gov